UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 5:22-CR-0024-GFVT-MAS |
| v. ) | |
| ) | |
| ALLANTE RAMONE BROWN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Allante Brown's ("Brown") Motion to Suppress. [DE 22]. Brown moves to suppress evidence seized during a warrantless search of the vehicle he was driving, arguing that the evidence was fruit of an unlawful seizure. [DE 22]. Following briefing from the parties, the Court held an evidentiary hearing, including testimony from three witnesses. [DE 32]. For the reasons stated herein, the undersigned recommends the District Court deny Brown's Motion to Suppress.

**I.    FACTUAL BACKGROUND**

On November 3, 2021, Officer Nichols was on patrol in the Richmond Road and Old Todds Road area of Lexington, Kentucky. [DE 22, Tr. at 4-5[1]]. Officer Nichols was a member of the Community Law Enforcement Action and Response ("CLEAR") Unit, which addresses complaints related to drug trafficking and violent crime. [*Id*. at 4]. Officer Nichols had been

---

[1] Citations refer to the actual transcript pagination rather than the CM/ECF Page ID numbers.

specifically directed to patrol the area in and around the Bluegrass Extended Stay Hotel because of ongoing complaints of drug activity. [*Id.* at 5]. Specifically, law enforcement had identified the parking lot as a place where a substantial number of drug exchanges and drug use were taking place. [*Id.* at 6].

On that evening, Officer Nichols entered the parking lot of the hotel in his marked cruiser. Upon his entry, a vehicle that was backed into a parking spot illuminated its headlights, pulled out of its parking spot, and exited the parking lot at a high rate of speed. [*Id.* at 6-7]. Finding this suspicious, Officer Nichols radioed his colleagues and described the vehicle, stated that it left the parking lot at a high rate of speed, and opined the vehicle was trying to elude him. [*Id.*].

Officer Brent Bereznak, also a member of the CLEAR Unit, responded to the call. [*Id.* at 8]. Officer Bereznak was situated within visual range of the parking lot exit, and he observed the vehicle leave the parking lot at a high rate of speed. [*Id.* at 70]. Officer Bereznak immediately got behind the vehicle and followed it. [*Id.* at 70-71]. Officer Bereznak stated that, while following the vehicle, the driver slowed down and became overly cautious, stopping at an intersection for an abnormally long period of time. [*Id.* at 71, 88-89]. While following the vehicle, Officer Bereznak ran the license plate number and learned that the registered owner had an active arrest warrant and the vehicle lacked insurance coverage. [*Id.* at 71-72].

Officer Bereznak then performed a traffic stop on the vehicle. [*Id.* at 72]. Brown was driving the vehicle, and a female sat in the passenger seat. [*Id.* at 72-73]. Neither Brown nor the passenger had a driver's license, so they provided their social security numbers to Officer Bereznak. [*Id.* at 90]. Officer Bereznak then returned to his vehicle and ran both social security numbers through his computer. [*Id.* at 90]. Based on information he received through his computer, Officer Bereznak confirmed Brown and the passenger's identities and that neither one

was the owner of the vehicle. [*Id*. at 90-91]. Officer Bereznak then searched the Kentucky CourtNet system and noticed that Brown was designated a persistent felony offender[2] and had multiple drug-related criminal cases, including a charge for drug trafficking in 2019. [*Id*. at 74-75, 95; Gov. Ex. 1A (Officer Bereznak's Body-Worn Camera "BWC")].

After discovering Brown's drug-trafficking charges, Officer Bereznak requested a K-9 unit over his radio. [Tr. at 97; Gov. Ex. 1A]. Officer Bereznak's request came approximately six minutes into the traffic stop and almost immediately after he learned of Brown's prior drug-trafficking conviction.[3] [Tr. at 97; Gov. Ex. 1A].

Officer Bereznak testified that, at that point, the traffic stop transitioned into an investigation of suspected drug activity. [Tr. at 93]. Officer Bereznak testified that his basis for calling a K-9 unit was the fact that Brown was coming from the Bluegrass Extended Stay hotel, Brown's evasive then overly cautious behavior while driving, and Brown's prior drug-trafficking conviction. [*Id*. at 96]. Officer Bereznak had conducted surveillance of the Bluegrass Extended Stay parking lot along with the Lexington Police narcotics unit for three weeks preceding Brown's traffic stop. [*Id*. at 65-66]. He testified that his surveillance discovered drug activity at the Bluegrass Extended Stay in the prior weeks. [*Id*.].

After Officer Bereznak called for a K-9 unit, Officer Nichols approached Officer Bereznak's vehicle, and the two discussed Brown's criminal history as reflected in the Kentucky CourtNet system, the fact that Brown did not have a driver's license, and the fact that a K-9 unit

---

[2] "Persistent felony offender" is a designation based on Kentucky criminal law meaning that a person is more than twenty-one years of age and stands convicted of a felony after having been convicted of at least one previous felony. KRS 532.080(1), (3).

[3] Officer Bereznak's BWC does not include a time stamp. However, the video shows that the traffic stop began at approximately the 1:45 mark, and Officer Bereznak called for a K-9 unit at the 7:10 mark. [Gov. Ex. 1A (Bereznak BWC)].

3

had been requested. [Gov. Ex. 1A]. Officer Nichols then returned to the driver's side of the stopped vehicle and told Brown that he needed to call someone to come get the vehicle since Brown did not have a license and could not leave driving the vehicle. [Def. Ex. E (Officer Nichols's BWC)]. Meanwhile, Officer Bereznak began working on Brown's citation for operating a vehicle without a license. [Tr. at 81-82; Gov. Ex. 1A.]. Officer Bereznak continued to work on the citation until the K-9 unit arrived at the scene, although he briefly left his car to ask Officer Nichols if he made sure to ask Brown to call someone to come get the vehicle. [Tr. at 81-82; Gov. Ex. 1A.].

The K-9 officer, Officer Ben Hallock, arrived approximately 19 minutes after Officer Bereznak's call. [TR. at 63; Def. Ex. C (CAD Report)]. Once Officer Hallock arrived at the scene, Officer Bereznak stopped working on the citation, left his cruiser, and briefed Officer Hallock on the basis for requesting a dog-sniff search. [Tr. at 81-82; Gov. Ex. 1A]. After the officers pulled Brown and the passenger out of the vehicle, Officer Hallock performed a dog sniff with his K-9. [Gov. Ex. 1A]. Officer Bereznak stood with Brown while the sniff search was being conducted, and Brown indicated that the person he called to come pick up the vehicle would be there in about ten minutes. [Tr. 82; Gov. Ex. 1A].

The K-9 alerted to the presence of narcotics, and officers searched the vehicle. [Tr. at 15, 115]. During the search, officers uncovered approximately 3.82 ounces of a mixture containing fentanyl. [*Id*. at 16]. Officer Nichols placed Brown under arrest. [Gov. Ex. 1A]. Officer Bereznak then issued the citation for operating a vehicle without a license. [Tr. at 49; Gov. Ex. 1A]. At the time the K-9 alerted to the presence of drugs in the vehicle, the person Brown called to pick up the vehicle had not arrived. [Tr. 80-81; Gov. Ex. 1A].

4

## II. ANALYSIS

Brown argues that officers unlawfully prolonged the traffic stop without independent reasonable suspicion.[4] The United States does not contest that the traffic stop was prolonged. Rather, the United States argues Officer Bereznak had reasonable suspicion such that he was permitted to prolong the stop. The Court agrees with the United States.

### A. LEGAL FRAMEWORK

The legal framework for seizures under the Fourth Amendment in the traffic-stop context is well established. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons'" under the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 809-10 (1986). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005).

However, traffic stops must be "limited in [both] scope and duration." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). "To be limited in scope, 'the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" *United States v. Cochrane*, 702 F.3d 334, 340 (6th Cir. 2012) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). And a traffic stop's tolerable duration "is determined

---

[4] At the suppression hearing, Brown's counsel briefly suggested that Officer Bereznak should have called for a K-9 unit immediately after learning of Brown's criminal history, implying that the time between learning of Brown's drug-trafficking history and Officer Bereznak's request for a K-9 unit resulted in an unconstitutional extension of the stop, even assuming reasonable suspicion supporting a dog sniff existed. [See Tr. at 122]. The Court disagrees. Based on Officer Bereznak's BWC footage, he called for a K-9 unit immediately after discovering Brown's criminal history in Kentucky CourtNet and while he was still checking the passenger's criminal history.

by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). As such, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Caballes*, 543 U.S. at 407.

Here, the parties agree the traffic stop was extended. The officers' initial mission was to address the vehicle owner's pending arrest warrant and apparent lack of insurance. Once Officer Bereznak discovered that the driver, Brown, was not the vehicle's owner, Bereznak then needed to address Brown's operation of a vehicle without a license. However, Bereznak abandoned this traffic citation when, by his own admission, he stopped working on the citation to assist with the dog sniff and further investigate Brown's possible drug activity. Consequently, per Bereznak, there is no question the traffic stop was extended.

Nevertheless, seizures *can* be lawfully extended beyond the time necessary to address the mission of the stop if "something happened *during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (quoting *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005)). So, while "[a] dog sniff, safety measures taken to facilitate a different investigation, and unrelated questioning, for example, are not tasks incident to the initial stop[,]" a traffic stop can be extended to accommodate such unrelated tasks as long as the officer has independent reasonable suspicion. *United States v. Lott*, 954 F.3d 919, 924 (6th Cir. 2020) (citing *Rodriguez*, 575 U.S. at 355-57).

"To satisfy the reasonable-suspicion standard, an officer must put forth 'more than an inchoate and unparticularized suspicion or hunch.'" *United States v. Whitley*, 34 F.4th 522, 532 (6th Cir. 2022) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). This standard requires

"considerably less than proof of wrongdoing by a preponderance of the evidence." *Sokolow*, 490 U.S. at 7. Whether an officer has a reasonable suspicion "is judged by the totality of the circumstances to 'determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008) (quoting *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Pearce,* 531 F.3d 374, 380 (6th Cir. 2008) (internal citation and quotation marks omitted). Information relevant to that inquiry includes "the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." *Campbell*, 549 F.3d at 371 (citing *Pearce*, 531 F.3d at 383; *Dorsey v. Barber,* 517 F.3d 389, 395 (6th Cir. 2008)).

**B.    OFFICER BEREZNAK'S REASONABLE SUSPICION**

As mentioned above, Officer Bereznak based his reasonable suspicion on three facts: (1) Brown was found in the parking lot of the Bluegrass Extended Stay Hotel, a location well-known to law enforcement and Officer Bereznak as a hotbed for drug activity; (2) Brown had erratic driving patterns, including exiting the parking lot at a high rate of speed upon seeing a marked patrol cruiser, driving excessively slow upon seeing a second marked cruiser, and then stopping at an intersection for an abnormally long period of time; and (3) Brown had a history of drug-related charges.[5] The Court will examine the propriety of these bases for reasonable suspicion in turn.

---

[5] As part of any traffic stop, "an officer's mission includes 'ordinary inquiries incident to [the traffic stop].'" *Rodriguez*, 575 U.S. at 355 (quoting *Caballes*, 543 U.S. at 408). Those inquiries ordinarily "involve checking the driver's license, determining whether there are

First, Brown was initially found in the parking lot of a hotel with a history of substantial drug trafficking activity. The Sixth Circuit has held that a defendant's presence in a high-crime area is one factor that may properly be considered in the officer's reasonable-suspicion analysis. *See United States v. Cooper*, 431 F. App'x 399, 401-02 (6th Cir. 2011) ("[A]s the district court found, the officers' testimony established that the stop occurred in a high-crime area. . . . This factor properly fits int the officers' reasonable-suspicion calculus."); *see also United States v. Johnson*, 620 F.3d 685, 692-93 (6th Cir. 2010) (holding that, in reasonable-suspicion analysis, the fact that the defendant was present in a location known for drug trafficking was properly considered in the totality of the circumstances, even though the officer observed no conduct from the defendant that was consistent with drug activity). Although this factor "may not, without more, give rise to reasonable suspicion," it is "relevant to the reasonable suspicion calculus." *United States v. Smith,* 594 F.3d 530, 541 (6th Cir. 2010) (quoting *United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006), *abrogated on other grounds by Cartwright v. United States*, 12 F.4th 572 (6th Cir. 2021)). Officer Bereznak's inclusion of where Brown was located is pertinent to reasonable suspicion.

Second, Officer Bereznak cited Brown's evasive driving behavior. The Supreme Court has found that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). *See also United States v. Keith*, 559 F.3d 499, 504 (6th Cir. 2009) (discussing that "evasive behavior on the part of a suspect is a factor

---

outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. (citing *Delaware v. Prouse*, 440 U.S. 648, 658-660 (1979)). "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id*. (citing *Prouse*, 440 U.S. at 658-59). Officer Bereznak's decision to determine the identification of Brown, including his criminal history, is included in such routine inquiries.

8

that may support a finding of reasonable suspicion"). In the driving context, the Sixth Circuit has found a failure to obey traffic laws (like stop signs and traffic signals), driving particularly slowly, and taking an unusual, circuitous route to be indicative of evasive driving. *United States v. S. D. Johnson*, 631 F. App'x 299, 304 (6th Cir. 2015); *United States v. Craig*, 306 F. App'x 256, 258 (6th Cir. 2009); *United States v. Helm*, 85 F. App'x 475, 476-77 (6th Cir. 2004). And the Supreme Court has specifically noted that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124. The Supreme Court highlighted while discussing evasion, however, that "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id*. at 125. Again, Brown's driving behavior alone could not support reasonable suspicion, but Officer Bereznak was permitted to consider it as a factor in examining the totality of the circumstances.

And finally, Officer Bereznak pointed to Brown's criminal history as a basis for his reasonable suspicion. Case law supports this conclusion as well. In the similar case of *United States v. Stepp*, the Sixth Circuit reviewed an extended stop to investigate possible drug trafficking activity. 680 F.3d at 664-67. There, the driver and passenger appeared nervous when handing over their licenses, the passenger feigned sleeping when the officer approached the vehicle, neither the passenger nor the driver knew who owned the vehicle, the driver was not listed as an authorized driver of the rental vehicle, the driver gave vague travel plans, and criminal history checks for both the driver and passenger revealed involvement in narcotics. *Id*. Discussing the role of criminal history in the reasonable-suspicion analysis, the Sixth Circuit acknowledged that its prior cases "often point in both directions." *Id*. at 667. Yet, the Sixth Circuit found that the fact that the driver and passenger's criminal histories demonstrated their involvement with narcotics was a factor

9

justifying further detention because it "related to the same suspicions that the officer was developing—that the occupants in the vehicle might be involved with drug trafficking." *Id*. And the Sixth Circuit noted that "[a]lthough a person with a criminal record could not be pulled over or detained based on the record itself, such a record is one factor that may justify further detention and that may cast a suspicious light on other seemingly innocent behavior." *Id*. As such, the vehicle occupants' history of narcotics involvement "cast[ed] a suspicions light on the otherwise weak indicators, particularly when combined with the [driver's] weak travel plans." *Id*.

Ultimately, Officer Bereznak correctly considered all three facts in determining if he had reasonable suspicion. And the Court, when reviewing these facts in the totality of the circumstances, concludes that such facts created a reasonable suspicion to extend the traffic stop and investigate Brown's suspected involvement with drug trafficking, including the time necessary to call for and accommodate a dog sniff.[6] *See United States v. Whitley*, 34 F.4th 522, 535 (6th Cir. 2022) ("The relevant inquiry … is whether the totality of the circumstances presented above

---

[6] During the suppression hearing, the United States briefly suggested that the dog sniff did not extend the traffic stop because it occurred during the time Brown was waiting for someone to arrive on scene and remove the vehicle. [Tr. at 128]. The Sixth Circuit has not addressed this specific issue. However, the Eighth Circuit, as well as one court in this district, has determined that a driver's lack of a valid operator's license extended the permissible duration of the traffic stop until officers could ensure that either a licensed driver or a tow truck arrived to remove the vehicle pursuant to the officer's community caretaking function or need to control the scene. *See United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020) ("[The officer's] discovery that Soderman's driver's license had been suspended justifiably extended the lawful scope of the traffic stop because of Soderman's legal inability to remove the vehicle from the scene and the consequential need for a licensed driver or a tow truck to do so."); *United States v. Lyvers*, No. 5:13-cr-58-JMH, 2013 WL 4039806, at *5 (E.D. Ky. Aug. 7, 2013) ("Because Defendant chose [to call someone to pick up the vehicle], the stop remained ongoing until Trooper Devasher ensured that a licensed driver arrived to move the Defendant's car. . . . [B]ecause the Court concludes that the stop was still ongoing at the time that Trooper Harris arrived and ran his dog around the car, Trooper Devasher was fully entitled to allow the narcotics dog to sniff the car and to subsequently search the car after the dog's alert."). Because the argument and factual support was never fully developed, the Court will not address it here.

supports a conclusion that the officers had reasonable suspicion to believe that Whitley was engaged in illegal activity."). Once the drug dog alerted to the presence of drugs in the vehicle, officers had probable cause to search the vehicle and all compartments within it. *See United States v. Howard*, 621 F.3d 433, 454-55 (6th Cir. 2010) (agreeing with the district court's determination that "[t]he dog sniff provided the best reason to believe contraband might be found in the [vehicle]," and, combined with other suspicious factors, provided probable cause to search the vehicle).[7]

### III.   CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** Brown's Motion to Suppress [DE 22]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. As defined by § 636(b)(1), Fed. R. Crim. P. 59(b), and local rule, within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 23rd day of August, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge

---

[7] Brown does not contest that the drug dog's alert to the presence of narcotics in his vehicle provided probable cause to search the vehicle.