UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 5:22-cr-00024-GFVT-MAS |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ALLANTE RAMONE BROWN, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on the Report and Recommendation filed by United States Magistrate Judge Stinnett addressing Defendant Allante Brown's Motion to Suppress [R. 22; R. 39.] Mr. Brown seeks to suppress evidence obtained from the warrantless search of a vehicle he was driving, arguing that police officers had no reasonable suspicion justifying the use of a drug-sniffing dog during a traffic stop. [R. 22.] Judge Stinnett recommends that the Court deny Mr. Brown's suppression motion. [R. 39.] The Court will **ADOPT** Judge Stinnett's Report and Recommendation for the reasons described below.

**I**

The Lexington Police Department's Community Law Enforcement Action and Response ("CLEAR") Unit addresses complaints involving drug and violent crime activity in its community, focusing on specific areas where criminal activity occurs. [R. 35 at 4.] Officers Nichols and Bereznak were members of this unit. One evening, Officer Nichols patrolled the area around the Bluegrass Extended Stay Hotel, responding to complaints about narcotics activity at the hotel—police received similar complaints previously and had made arrests around the hotel in prior weeks. Police identified the parking lot of the hotel specifically as a place

where criminal activity occurs. *Id.* at 6.  When Officer Nichols drove through the parking lot, he saw a vehicle quickly turn on its headlights and leave "at a high rate of speed." *Id.* at 7.  Finding this conduct suspicious, Officer Nichols described the vehicle and the activity to another officer, Officer Bereznak, by radio. *Id.* at 8.

Officer Bereznak, waiting on the road adjacent to the parking lot, followed the vehicle. *Id.* at 70.  Bereznak stated that the driver became "overly cautious," moving very slowly and stopping for "a very long time" at a stop sign. *Id.* at 71.  While following, Officer Bereznak ran the vehicle's license plate with dispatch and learned that it lacked insurance coverage and that the registered owner had an active arrest warrant. *Id.* at 72.  Dispatch also advised that the vehicle had previously been stopped by narcotics units, resulting in an arrest. *Id.* at 108.

Officer Bereznak then stopped the vehicle. *Id.*  Mr. Brown was driving, and a female passenger sat in the front passenger seat. Neither were the registered owner of the vehicle. *Id.* at 72-73, 90.  Officer Bereznak, upon learning that neither occupant had a driver's license, took and ran their social security numbers in the police database as well as the Kentucky CourtNet system, which shows previous criminal charges. *Id.* at 74, 90.  The CourtNet system showed Officer Bereznak that Mr. Brown was designated as a persistent felony offender and had multiple previous narcotics-related charges, including a drug-trafficking charge two years prior. *Id.* at 75, 95.  After learning about Mr. Brown's prior drug involvement, Officer Bereznak requested a K-9 unit to sniff the vehicle for drugs. *Id.* at 95.

Officer Bereznak testified that he called the K-9 unit to investigate for drugs because of Mr. Brown's suspicious driving behavior, Mr. Brown's previous involvement with drugs as shown by the CourtNet search, and because Mr. Brown was coming from the Bluegrass Extended Stay Hotel. *Id.* at 96.

The K-9 handler arrived at the scene shortly after the call and received a briefing from Officer Bereznak about the reason for the K-9 request. *Id.* at 63, 81, 113. While conducting a drug-sniff, the K-9 alerted officers to the presence of narcotics. *Id.* at 115. Officers then searched the vehicle and found 3.82 ounces of a substance containing fentanyl. *Id.* at 16.

A federal grand jury indicted Mr. Brown on one count of possession with intent to distribute 40 grams or more of a mixture or substance containing fentanyl and heroin. [R. 1.] Mr. Brown then filed a suppression motion to exclude all evidence obtained during the search of the vehicle he was driving. [R. 22.] After considering the Motion to Suppress, the response by the United States, and Mr. Brown's reply, Magistrate Judge Stinnett recommended that the Court deny Mr. Brown's Motion to Suppress. [R. 39.] Mr. Brown timely filed an objection to the Report and Recommendation, arguing that Lexington Police did not have the reasonable suspicion necessary to justify the K-9 sniff. [R. 40.] The Court reviews this objection to the Report *de novo*. 28 U.S.C. § 636(b)(1)(c).[1]

## II

### A

The Fourth Amendment provides that "the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause…." U.S. Const. amend. IV. For Fourth Amendment purposes, a traffic stop "constitutes a seizure of persons." *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (internal citations omitted). A law enforcement officer may initiate

---

[1] Defendant's objection argues that the Report and Recommendation fails under the clear-error standard, which is used "[w]hen reviewing a district court's decision concerning a motion to suppress." [R. 40 at 5 (internal quotations omitted).] Certainly, this would be the correct standard of review for a court of appeals reviewing a district court's decision. But the Court is not reviewing another district court's decision. The objection before the Court is to a magistrate's report and recommendation for a motion to suppress. Thus, the Court reviews the objection *de novo*. 28 U.S.C. § 636(b)(1)(c); *see, e.g.*, *United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2015).

3

a traffic stop when he "possesses either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). However, the traffic stop must be limited in scope and duration. *See United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). A traffic stop's duration is determined by the stop's mission: addressing "the traffic violation that warranted the stop" and attending to "related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).

But a stop can be extended if " 'something happened during the stop to cause the officer to have a 'reasonable and articulable suspicion that criminal activity [is] afoot.' " [2] *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). The traffic stop is then extended long enough to confirm or dispel these new suspicions. *See Winters*, 782 F.3d at 296. Thus, police can extend a stop to conduct a dog sniff if the officer has independent reasonable suspicion that criminal activity is afoot, although the sniff is unrelated to the initial traffic violation. *See United States v. Lott*, 954 F.3d 919, 924 (6th Cir. 2020) (citing *Rodriguez*, 575 U.S. at 355-57).

Reasonable suspicion is present when a police officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). The officer must point to "specific and articulable facts" that are "more than an ill-

---

[2] During the suppression hearing, "the United States briefly suggested that the dog sniff did not extend the traffic stop because it occurred during the time Brown was waiting for someone to arrive on the scene and remove the vehicle." [R. 39 at 10 n.4.] Indeed, a drug-dog sniff does not require independent reasonable suspicion unless it extends the duration of the traffic stop. *See Caballes*, 543 U.S. at 407-08. And a traffic stop might be ongoing if a defendant is waiting to be picked up after being stopped by police for driving without a license—even if the citation has already been issued. *See United States v. Lyvers*, No. 5:13-cr-58-JMH, 2013 WL 4039806, at *5 (E.D. Ky. Aug. 7, 2013). The Sixth Circuit has not visited the issue. The Report and Recommendation also did not address the argument "[b]ecause the argument and factual support was never fully developed." [R. 39 at 10 n.6.] Therefore, this Court too will assume the dog-sniff extended the stop and will not address the issue.

defined hunch." *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir.2004) (internal

quotation marks omitted).  However, reasonable suspicion requires "considerably less than proof

of wrongdoing by a preponderance of the evidence."  *United States v. Sokolow*, 490 U.S. 1, 7

(1989).

Information relevant to the reasonable suspicion inquiry includes "the officer's own

direct observations, dispatch information, directions from other officers, and the nature of the

area and time of day during which the suspicious activity occurred." *Campbell*, 549 F.3d at 371

(internal citations omitted).  Indeed, an officer may properly consider someone's presence in a

high-crime area as a contributing factor to reasonable suspicion, although it may not give rise to

reasonable suspicion alone.  *See United States v. Johnson*, 620 F.3d 685, 692-93 (6th Cir. 2010)

(holding that presence in high-crime areas fits into the reasonable-suspicion analysis).  Another

factor leading to reasonable suspicion of criminal activity is an officer's knowledge of a person's

criminal history, particularly when that knowledge is about specific incidents and related to the

same suspicions the officer is developing.  *See United States v. Stepp*, 680 F.3d 651, 667 (6th

Cir. 2012).  Lastly, a person's "nervous, evasive behavior is a pertinent factor in determining

reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).  When driving,

nervousness indicating possible criminal activity may look like the person driving slowly, failing

to obey traffic laws, or taking an unusual route.  *See, e.g.*, *United States v. S.D. Johnson*, 631 F.

App'x 299, 304 (6th Cir. 2015); *United States v. Craig*, 306 F. App'x 256, 258 (6th Cir. 2009);

*United States v. Helm*, 85 F. App'x 475, 476-77 (6th Cir. 2004).

Further, courts do not examine each factor leading to an officer's suspicions

independently.  Courts look at the totality of the circumstances: whether "the individual factors,

taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely

consistent with innocent behavior." *Campbell*, 549 F.3d at 371 (quoting *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006)). The Sixth Circuit has repeatedly affirmed findings of reasonable suspicion based on an aggregation of factors that, alone, would be insufficient. *See, e.g.*, *United States v. Calvetti*, 836 F.3d 654, 667 (6th Cir. 2016) ("two strong indicators"— dubious travel plans and relevant criminal history—along with nervousness and inconsistent statements); *United States v. Paulette*, 457 F.3d 601 (6th Cir. 2006) (criminal history, suspicious hand movements, efforts to evade police, and presence in a high-crime area); *Winters*, 782 F.3d at 302 (nervousness, inconsistent travel plans, and an odd rental arrangement); *United States v. Campbell*, 511 F. App'x 424 (6th Cir. 2013) (visible nervousness, history of drug charges, and "an unusually strong smell of air freshener").

**B**

Mr. Brown objects to the Report and Recommendation on the grounds that the Report incorrectly concluded that Lexington Police had reasonable suspicion to extend the traffic stop to conduct a K-9 drug sniff. [R. 40 at 7.] Because officers lacked a reasonable suspicion of criminal activity, Mr. Brown argues evidence obtained by using the K-9 must be suppressed. *Id.* at 14. He does not object to the Report on the grounds that police lacked reasonable suspicion to institute the original traffic stop, nor does he object on the grounds that police lacked authority to seize the evidence once the K-9 notified police of the presence of narcotics.

In this case, Judge Stinnett correctly considered the totality of the circumstances and determined that Officer Bereznak had a "particularized and objective basis" for suspecting Mr. Brown of criminal activity. *See Gross*, 662 F.3d at 399 (internal quotation omitted). Officer Bereznak formed this reasonable suspicion from three factors: (1) Mr. Brown's presence in a

high-crime area, (2) Mr. Brown's unusual driving behavior, and (3) Mr. Brown's criminal history.  [R. 35 at 96.]

First, Mr. Brown's presence in a high-crime area properly contributed to Bereznak's suspicions that criminal activity was afoot.  Police patrolled the Bluegrass Extended Stay Hotel because of complaints about ongoing drug activity around the hotel.  [R. 35 at 6.]  In fact, those complaints resulted in arrests and specifically identified the parking lot where Mr. Brown was seen as a place where criminal activity occurred.  *Id*.  Judge Stinnett properly considered Mr. Brown's presence relevant to the reasonable suspicion calculus.  [R. 39 at 8.]

Second, Mr. Brown's unusual driving properly contributed to Bereznak's suspicions. When Officer Nichols entered the parking lot for the hotel, he witnessed Mr. Brown immediately turn on his headlights and leave "at a high rate of speed."  *Id.* at 7.  But once he turned away from Officer Nichols and onto the adjacent road, Mr. Brown became unusually cautious: he started driving slowly and stopped at a stop sign for an extended period.  *Id.* at 70-71.  Judge Stinnett properly identified this unusual driving behavior as a factor leading to the reasonable suspicion of criminal activity. *See Wardlow*, 528 U.S. 119, 124; [R. 39 at 9.]

Third, Mr. Brown's criminal history raised suspicions.  Although a person's criminal history cannot constitute reasonable suspicion alone, Officer Bereznak's knowledge was about specific incidents that related to the same suspicions he was developing about Mr. Brown.  *See Stepp*, 680 F.3d at 667.  Bereznak's CourtNet search showed that Mr. Brown was a persistent felony offender and had multiple drug charges, including a drug-trafficking charge two years prior.  [R. 35 at 75, 95.]  Moreover, dispatch also advised that the vehicle had previously been stopped by narcotics units, resulting in an arrest.  *Id.* at 108.  Judge Stinnett correctly considered

Mr. Brown's history of narcotics involvement when determining that Officer Bereznak had a reasonable suspicion of criminal activity. *Stepp*, 680 F.3d at 667; [R. 39 at 9.]

Taken together, these factors provided a particularized and objective basis for Officer Bereznak's reasonable suspicion of criminal activity—a standard requiring "considerably less than proof of wrongdoing by a preponderance of the evidence." *Sokolow*, 490 U.S. at 7; *Campbell*, 549 F.3d at 371 (examining whether "the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior.") (internal quotations omitted). This reasonable suspicion then permitted police to extend the traffic stop long enough to confirm or dispel their suspicions by conducting a K-9 sniff. *See Winters*, 782 F.3d at 296. Ultimately, the Report and Recommendation correctly considered the factors contributing to Officer Bereznak's reasonable suspicion and concluded that the K-9 search was permissible.

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Allante Brown's Objections **[R. 40]** are **OVERRULED**,

2. Judge Stinnett's Report and Recommendation **[R. 39]** is **ADOPTED** as and for the opinion of the Court, and;

3. Defendant Allante Brown's Motion to Suppress **[R. 22]** is **DENIED**.

This the 26th day of September, 2022.

Gregory F. Van Tatenhove
United States District Judge